**Stacey A. Martinson, P.C.**, OSB No. 074708
stacey.martinson@millernash.com
**Vanessa T. Kuchulis**, OSB No. 154387
vanessa.kuchulis@millernash.com
MILLER NASH LLP
US Bancorp Tower
111 SW Fifth Ave, Ste 3400
Portland, OR 97204
Telephone: 503.224.5858
Facsimile: 503.224.0155

*Attorneys for Plaintiff Portland Community College*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PORTLAND COMMUNITY COLLEGE, | Case No. |
| Plaintiff, | COMPLAINT FOR DECLARATORY |
| v. | AND INJUNCTIVE RELIEF, PROMISSORY ESTOPPEL, AND BREACH OF CONTRACT |
| UNITED STATES DEPARTMENT OF VETERANS AFFAIRS; DENIS MCDONOUGH, in his official capacity as Secretary of the United States Department of Veterans Affairs; UNITED STATES DEPARTMENT OF THE TREASURY; JANET YELLEN, in her official capacity as Secretary of the United States Department of the Treasury; BUREAU OF THE FISCAL SERVICE, UNITED STATES DEPARTMENT OF THE | JURY DEMAND REQUESTED |

Page 1 -     Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

TREASURY; and TIMOTHY GRIBBEN,
in his official capacity as Commissioner of
the Bureau of the Fiscal Service, United
States Department of the Treasury,

        Defendants.

## INTRODUCTION

1.      Plaintiff Portland Community College ("PCC"), is a not-for-profit community college that has served the citizens of Oregon for over 60 years. PCC prides itself on its students' success, quality education, and diversity, equity, and inclusion.

2.      As part of its mission, many of PCC's students are veterans utilizing their hard-earned educational benefits pursuant to the Post-9/11 Veterans Educational Assistance Act of 2008, 38 U.S.C. § 3301, *et seq.*, (the "Post-9/11 G.I. Bill").

3.      Defendant United States Department of Veterans Affairs (the "VA") is responsible for overseeing the Post-9/11 G.I. Bill program. However, the VA contracts and delegates its authority to State Approving Agencies ("SAAs") to review, approve, and monitor educational programs. *See* 38 U.S.C. § 3671. In Oregon, the VA contracted with the Higher Education Coordinating Commission as the SAA ("Oregon's SAA") until October 1, 2018, when the VA terminated its contract with Oregon's SAA.

4.      Many veterans looked to PCC's flight training program to turn their military experience into well-paid careers. Indeed, PCC's Aviation Science program has a high placement rate in introductory jobs as flight instructors, with strong potential for advancement to commercial airline pilot within a few years of completing the program. These aviation programs provide a much-needed pipeline of new airplane and helicopter pilots at a time when the aviation

Page 2 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

industry "faces chronic pilot shortages in the U.S. and around the world," and such programs are especially popular with veteran students, many of whom have beneficial relevant military experience.[1]

5.      In 2015, Congress started raising concerns about the VA's lack of oversight of the Post-9/11 G.I. Bill benefits for flight programs—namely that the flight schools were costing the federal government too much. In response, in 2015, S. Rep. Brad Wenstrup, R-Ohio, introduced H.R. 476 (114th Congress (2015-2016)) to cap and limit flight benefits, as well as expand the VA's right to audit through "compliance surveys."[2] However, H.R. 476, which was amended into H.R. 4149 (115th Congress (2017 – 2018)), did not pass after receiving considerable criticism that such a cap would unfairly impact the ability of veterans to pursue pilot jobs. Specifically, the limit would be tantamount to preventing veterans from entering flight programs.

6.      Regardless of the failure of any legislation to limit the Post-9/11 G.I. Bill for flight programs, the VA had already devised a scheme to limit veterans' benefits, and in 2017, the VA purposefully targeted aviation flight schools in Oregon as a cost-saving measure in an attempt to recoup Post-9/11 G.I. Bill payments.

7.      Specifically, the VA directed its Muskogee Regional Office ("Muskogee RO") to conduct unauthorized "compliance surveys" (i.e., audits) of the flight

---

[1] *See* Garcia, Marisa, *Advocates Worry that Changes to GI Bill Will Make Pilot Crisis Worse*, Forbes (Aug. 2, 2018, 8:18 AM), https://www.forbes.com/sites/marisagarcia/2018/08/02/advocates-worry-that-changes-to-gi-bill-will-make-pilot-crisis-worse/#39866376d524.

[2] https://www.congress.gov/bill/114th-congress/house-bill/476/text

4864-9272-3203.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

programs at Oregon community colleges, including PCC, Lane Community College, Central Oregon Community College,[3] and Klamath Community College (collectively, the "Oregon Community Colleges").

8.     Even before the compliance surveys were conducted, the VA had already determined that it was going to hit each of the Oregon Community Colleges with an alleged overpayment of Post-9/11 G.I. Bill payments related to the flight programs.

9.     In fact, the VA accused all of the Oregon Community Colleges of being overpaid Post-9/11 G.I. Bill payments benefits for their flight schools. Although the VA had already approved the flight schools, it decided, years later, that it should not have approved them, and claims it should get the paid benefits back. For PCC, the alleged overpayment amount is approximately $6 million.

10.     The VA boasts that its mission is to fulfill President Lincoln's Promise: "To care for him who shall have borne the battle, and for his widow, and his orphan" by serving and honoring the men and woman who are America's veterans.[4] The VA's attack on the Oregon Community Colleges is an attack on the veteran students. In the end, the veterans suffer, and the VA should be held accountable for its appalling conduct.

---

[3] Central Oregon Community College ("COCC") filed suit against the VA on April 10, 2020 (the "COCC Complaint"). *Central Oregon Community College v. U.S. Dept. of VA, et al.*, Case No. 6:20-cv-00594-MK, (D. Oregon, April 10, 2020). The suit alleges that the VA failed to provide COCC with due process rights for the alleged overpayments to COCC.

[4] *See* https://www.va.gov/ABOUT_VA/index.asp (last visited November 15, 2021).

4864-9272-3203.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

11.     This suit arises out of the VA's wrongful claim that it overpaid PCC approximately $6 million in Post-9/11 G.I. Bill benefits, and the wrongful offset of over $1.8 million from PCC.

## JURISDICTION AND VENUE

12.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over PCC's claims arising under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the Fifth Amendment to the United States Constitution.

13.     This Court is authorized to grant the relief requested in this case pursuant to the APA, 5 U.S.C. § 706; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; and the Mandamus Act, 28 U.S.C. § 1361.

14.     Venue is proper in this judicial district because PCC resides in this district and because a substantial part of the acts or omissions giving rise to the claims occurred and continues to occur in this judicial district. 28 U.S.C. §§ 1391(b)(2), 1391(e)(1).

## PARTIES

15.     <u>Plaintiff PCC</u>. Plaintiff PCC is a public community college, duly organized and established under the provisions of ORS Chapter 341, with its primary campus located in Portland, Oregon. It is the largest community college in the state of Oregon and serves 1.9 million residents mostly in the five-county area of Multnomah, Washington, Yamhill, Clackamas, and Columbia counties. PCC offers programs that include aviation instruction for airplane and helicopter pilots, many of whom are United States military veterans.

Page 5 -     Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

16.   <u>Defendant VA</u>. Defendant VA is a federal agency that provides a wide range of services to eligible military veterans and their families, and is an agency within the meaning of 5 U.S.C. § 551(1).

17.   <u>Defendant Denis McDonough</u>. Defendant Denis McDonough is Secretary of the VA and is sued in his official capacity.

18.   <u>Defendant United States Department of the Treasury</u>. Defendant United States Department of the Treasury (the "Treasury") is a federal agency that is responsible for managing government accounts and the public debt and is an agency within the meaning of 5 U.S.C. § 551(1).

19.   <u>Defendant Janet Yellen</u>. Defendant Janet Yellen is Secretary of the Treasury and is sued in her official capacity.

20.   <u>Defendant Bureau of Fiscal Service</u>. Defendant Bureau of Fiscal Service (the "Fiscal Service") is an institutional component of the Treasury that manages a debt collection program known as the Treasury Offset Program ("TOP").[5] TOP is a centralized program that offsets federal payments to collect delinquent non-tax debts owed to federal agencies unless exempted by federal statute or other authority. *See* 31 U.S.C. § 3716.

21.   <u>Defendant Timothy Gribben</u>. Defendant Timothy Gribben is the Commissioner of Defendant Fiscal Service and is sued in his official capacity.

---

[5] *Treasury Offset Program*, Bureau of the Fiscal Service, https://fiscal.treasmy.gov/top/ (last visited Nov. 6, 2021).

4864-9272-3203.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

## FACTUAL ALLEGATIONS

### The Post-9/11 G.I. Bill is for the Benefit of Veterans

22.    Starting in 1944, Congress passed the first in a series of statutes to fund educational assistance programs that allow veterans and their families to enroll in qualifying educational programs. The Post-9/11 G.I. Bill was signed into law in June 2008 and became effective on August 1, 2009. *See* Pub. L. No. 110-252, tit. V, §§ 5001-03, 122 Stat. 2357 (2008) (codified at 38 U.S.C. §§ 3301 *et seq.*). It provides education benefits to certain veterans who served in active military duty after September 11, 2001, or their dependents. *See* 38 U.S.C. § 3311(a), (b). Individuals who meet the eligibility requirements are entitled to up to 36 months of education benefits. *See* 38 U.S.C. § 3312(a).

23.    Such education benefits include enrollment in an approved aviation degree program, and funding options vary depending on the type of coursework and educational institution. When a veteran is enrolled in a degree program at a public institution of higher learning, like PCC, the Post-9/11 G.I. Bill provides tuition funding plus a monthly housing allowance and stipend for books and supplies.

### Oregon's SAA and VA's Approval of PCC's Aviation Programs

24.    The VA's oversight of funding provided under the Post-9/11 G.I. Bill is governed by statute, regulations promulgated by the VA Secretary, and inconsistently by internal VA manuals, including a manual for education benefits provided to the VA's regional offices (the "M22-4 Manual").

25.    In order for veteran students to use Post-9/11 G.I. Bill benefits to pay for a particular course of education, that course must be approved by the appropriate SAA.

Page 7 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

*See* 38 U.S.C. § 3672. In Oregon, the SAA was Oregon's SAA, and PCC worked closely with Oregon's SAA for approval and guidance related to the approval of its aviation flight programs and for clarification of the Post-9/11 G.I. Bill benefits.

26.     At all times relevant, the Oregon SAA approved PCC's aviation flight programs, including the following AAS Degrees (the "PCC Aviation Programs"): (1) Aviation Science: Airplane with Flight Instructor; (2) Aviation Science: Airplane without Flight Instructor; and (3) Aviation Science: Helicopter.

27.     In fact, PCC received notice of approval for the PCC Aviation Programs from both Oregon's SAA and the VA for each year leading up to the VA's targeting of the Oregon Community Colleges in 2017. The VA documents these approvals on what it refers to as a "WEAMS 1998 Report." Attached as <u>Exhibit 1</u> are copies of the relevant portions of WEAMS 1998 Reports informing PCC that the PCC Aviation Programs were approved for the 2014 to 2016 academic years.

### The Annual Compliance Surveys

28.     The VA and SAAs monitor schools and their approved courses for compliance with all applicable provisions of the laws administered by the VA through "Annual Compliance Surveys." 38 U.S.C. § 3693. *See also* M22-4 Manual, Part 10, Section 1.01(a)(b).

29.     The M22-4 Manual provides that an Annual Compliance Survey's period should begin effective the last period that had been surveyed—meaning that if the VA or SAA already conducted an Annual Compliance Survey for Spring 2016, then the VA's new survey period would begin the next term in 2016. *See* M22-4 Manual, Part 10, Section 3.01.

4864-9272-3203.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

30.    Moreover, when conducting the Annual Compliance Surveys, the provisions of laws and regulations cannot be applied for any period before their effective date. *Id.* at Part 10, Section 3.01.

31.    When an Annual Compliance Survey reveals reporting or approval errors implying that a substantial pattern of overpayments may exist, the survey sample will be systematically expanded. *Id.* at Part 10, Section 5.01. In certain cases, the VA may decide to expand the survey to a 100 percent review of all records from the prior three years ("100 Percent Audit"). *Id.*

32.    From 2012 to 2016, the PCC's Annual Compliance Surveys did not indicate any material discrepancies in the PCC Aviation Programs or the existence of any alleged overpayments of Post-9/11 G.I. Bill benefits.

33.    On April 13, 2017, one month before the Trump Administration's announcement of proposed budget cuts to aviation training programs for veterans, an Education Compliance Survey Specialist ("CSS") from the VA's Muskogee office notified PCC that she was taking over the school's ongoing Annual Compliance Survey. In addition, she inexplicably requested documents dating back to 2013—a time period unquestionably already subjected to an Annual Compliance Survey—and stated that the 2017 survey would be a continuance of the annual compliance survey conducted in June 2016.

34.    The VA conducted the Annual Compliance Survey at PCC on April 18, 2017 (the "April 2017 Compliance Survey"). Within two days, on April 20, 2017, the VA sent a letter to Oregon's SAA to suspend the PCC Aviation Programs.

Page 9 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

35.     By April 27, 2017, the CSS informed PCC that the VA had identified certain compliance issues and were suspending approval of PCC's Aviation Programs. The CSS asked PCC to make certain changes and supply the VA with additional documents to ensure compliance, which PCC promptly performed and provided. Following PCC's submissions, the VA removed the suspension.

36.     In May 2017, the White House released its proposed budget for fiscal year 2018, which sought to impose various cost-saving proposals at the VA (even while increasing the VA's overall funding).[6] One such cost-cutting proposal targeted aviation training programs under the Post-9/11 G.I. Bill, which the Trump Administration predicted would save a total of $42 million annually.[7] However, the Trump Administration could not secure Congressional support to cut aviation-training programs, and that element of its proposed 2018 budget was not included in the final budget that Congress ultimately passed in October 2017.[8] The Trump Administration continued to press Congress for similar cuts to aviation training programs for veterans without success.[9]

---

[6] Shane, Leo, *Trump's big VA budget request comes with proposed trims to veterans benefits*, Rebootcamp.MilitaryTimes.com (May 23, 2017), https://:rebootcamp.militarytimes.com/news/pentagon-congress/2017/05/23/trump-s-big-vabudget-reguest-comes-witb-proposed-trims-to-veterans-benefits/.

[7] *Id.*

[8] Ferris, Sarah, *Senate budget, clearing path for tax reform*, Politico (Oct. 19, 2017), https://www.politico.com/storv/2017/10/19/senate-budget-tax-overhaul-vote-a-rama-243963.

[9] Wentling, Nikki, *Trump's budget request seeks another increase in VA funding*, Stars and Stripes (Mar. 11, 2019), https://www.stripes.com/news/us/trump-s-budget-request-seeks-another-increase-in-va-funding-1.572205.

Page 10 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

37.     In June 2017, PCC received notification from the VA that it was expanding its compliance survey to a 100 Percent Audit.

38.     In July 2017, the VA informed PCC that although the SAA removed the suspension of admitting new-veteran students to PCC's Aviation Programs, the VA disagreed with the SAA, and informed PCC that the program was still suspended.

### The April 2017 Compliance Survey Results

39.     On January 18, 2018, *eight months* after the April 2017 Compliance Survey, the VA sent a letter to PCC citing eleven categories of "errors," but did not identify any veteran students in the letter—making it impossible to decipher the VA's allegations.

40.     Then, on March 28, 2018, the VA issued PCC an additional report to "provide more specific information concerning the individual discrepancies listed in [the VA's] findings letter of January 18, 2018" (the "March 2018 Report"). Contrary to VA regulations and the M22-4 Manual, the VA's Finance Officer did not proceed to compute PCC's potential liability or notify the school of its rights under the School Liability Process. *See* 38 C.F.R. § 21.4009; M22-4 Manual, Part 1, Section 7.03. Further, the VA did not inform PCC that any committee on school liability had been formed, nor was PCC given an opportunity to challenge the qualifications of the proposed panel members, to attend a prehearing conference and hearing, or to receive a panel decision with notice. *See* 38 C.F.R. § 21.4009; M22-4 Manual, Part 1, Section 7.03.

41.     As alleged below, the VA's findings in the March 2018 Report lack adequate explanation, are not supported by evidence, and are internally inconsistent. For example, the March 2018 Report alleged that the PCC Aviation Programs were not approved. As

Page 11 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

stated above, *the Oregon SAA and the VA approved the PCC Aviation Programs*, and enrollment certifications were provided by PCC based on the guidance and specific instructions of the SAA and Kate Nicholson, the Oregon Education Liaison Representative from the VA.

42.     In other words, the VA is claiming that, although it approved the PCC Aviation Program from 2014 to April 2017, the VA wants to *retroactively* claim that the veterans were not entitled to Post-9/11 G.I. Bill benefits during those time periods. The practical effect of the VA's positon is that it would require PCC to repay the tuition and fees of a *veteran student who already graduated from the PCC Aviation Program.* It is unclear whether the VA is also trying to recoup these same Post-9/11 G.I. Bill benefits from the veteran students personally.

43.     PCC has repeatedly tried to explain these issues to the VA through a series of letters, phone calls, in-person meetings, and additional documentation dating back to 2018, but the VA has refused to engage or allow PCC to challenge these findings.

### The VA's Alleged Tuition/Fees Overpayment of Post-9/11 G.I. Bill to PCC

44.     Starting in May 2018, PCC started to receive multiple letters from the VA's Muskogee RO that there was a tuition overpayment of Post-9/11 G.I. Bill benefits (the "Muskogee Letters"). Almost all of the Muskogee Letters provided an inapplicable reason for the overpayment:

- The school submitted an amended 1999 showing a reduction in tuition and fee charges or a reduction in Yellow Ribbon amount, or both.

For reference, the term "1999" refers to a form that PCC used to alert the VA that a student's enrollment had changed. However, in almost all cases, PCC never actually submitted a 1999 for the student in question. As such, this supposed "reason" for the debt could not actually apply.

4864-9272-3203.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

45.     None of the Muskogee Letters indicated if the alleged overpayment was connected to the 2017 Compliance Survey.

46.     Within a month after the Muskogee Letters, the Debt Management Center of the VA (the "DMC") then sent multiple letters to PCC (the "DMC Letters") stating:

> The Department of Veterans Affairs recently notified you that education benefits were adjusted due to non-entitlement. Since the funds for this enrollment were sent directly to the school, we ask that you return these funds.

Again, the VA failed to give any specific reason for the alleged overpayment in the DMC Letters.

47.     Astonishingly, the DMC Letters were actually form letters that the DMC would normally send to students/veterans, as opposed to institutions of higher learning ("IHL"), like PCC. The DMC's incorrect use of a student form letter resulted in the VA's improper notice and failure to properly inform PCC of its rights to dispute the alleged overpayment, and added to the confusion as to how the alleged overpayments were calculated.

48.     In total, the VA claims that it overpaid PCC approximately $6 million in undue tuition and fees of Post-9/11 G.I. Bill benefits (the "Alleged Tuition/Fees Debt").

49.     In sum, the VA arbitrarily and incorrectly claimed that PCC's actions caused the VA to overpay on behalf of PCC's student-veterans for flight training education.

## The VA's Refusal to Follow the School Liability Process

50.     When collecting debts related to overpayment of GI Bill benefits, the VA must follow certain laws and procedures (the "School Liability Process"). *See* 38 U.S.C. § 3685; 38 C.F.R. § 21.9695.

Page 13 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

51.     The VA cannot hold PCC liable for the Alleged Tuition/Fees Debt unless the VA follows the administrative process under the School Liability Process, and there is a finding of willful or negligent conduct of PCC. This did not occur.

52.     In particular, when attempting to recoup debts from an IHL—such as PCC—stemming from alleged willful or negligent false certification by the IHL or failure to certify excessive absences, discontinuance, or interruption of a course, the VA and DMC must, at least, follow the procedures outlined below:

(a)     Upon deciding evidence exists to warrant a finding of debt liability, send a Notice of Intent of Potential School Liability ("Notice of School Liability") to the IHL detailing each of the school's actions and/or omissions which resulted in a finding of potential debt liability;

(b)     Provide the IHL with a hearing before a panel drawn from the Committee on School Liability (the "Committee") before a decision is made as to whether the IHL is liable for the debt; and

(c)     Allow the IHL the ability to appeal an adverse Committee decision to the Central Office School Liability Appeals Board. *See* 38 C.F.R. § 21.9695(b)(3)(iii); 38 C.F.R. § 21.4009.

53.     The VA failed to follow these procedures. In particular, the VA failed to send PCC a Notice of School Liability. Instead, the VA elected to send PCC hundreds of individual letters, each of which already assumed liability on the part of PCC for overpayments associated with individual students. These letters did not include specific reasoning for the Alleged Tuition/Fees Debt. As a result, PCC has never had clarity as to VA's reasoning or rationale for why it is being held liable for the Alleged Tuition/Fees Debt.

Page 14 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

54.    The VA's behavior in this regard is completely contradictory to the rules and procedures outlined above. Based solely on these facts, the Alleged Tuition/Fees Debt is invalid.

55.    Moreover, the VA has not followed its internal process that is required when potential overpayments are identified. Under VA regulations, if a 100 Percent Audit "has been performed because of errors found in the initial sample of records, the results will *always* be referred to the [Education Officer[10] of the VA's Committee on School Liability] for a determination of potential liability.[11] *Id.* at Part 1, Section 7.04 (emphasis added). *See also id.* at Part 10, Section 6.05 ("If a 100 percent audit has been performed, referral is required."). Pursuant to the agency's regulations, the Secretary of Veterans Affairs has "delegate[d] to each Committee on School Liability, and to any panel that the chairperson of the Committee may designate and draw from the Committee, the authority to find whether an educational institution is liable for an overpayment." 38 C.F.R. § 2I.4009(c)(2).

56.    After an Annual Compliance Survey is referred to the Committee on School Liability, both VA regulations and the M22-4 Manual require the following internal review procedures:

A.    **Initial Decision:** The Education Officer decides whether there is evidence that would warrant a finding that a school is potentially liable for an overpayment.

---

[10] The relevant regulations and the M22-4 Manual alternatively refer to this official as the "Education Officer" or the "Adjudication Officer." In this Complaint, we will use the phrase "Education Officer."

[11] Each VA Regional Processing Office is required to establish a Committee on School Liability. *See* 38 C.F.R. § 21.4009(c)(1).

4864-9272-3203.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

**B.**    **Notice to School:** Following each finding of potential liability, the Finance Officer will compute the potential liability and notify the school in writing of the amount and of its rights under the school liability procedures.

**C.**    **Hearings:** A school is entitled to a prehearing conference (unless waived) and a hearing before a panel drawn from the Committee on School Liability before a decision is made as to whether it is liable for an overpayment. The Committee on School Liability will consider all evidence and testimony presented at the hearing."[12]

**D.**    **Role of District Counsel:** The District Counsel will present the VA's case at the hearing and will be present at any prehearing conference. If no hearing is requested, the District Counsel will present the VA's case directly to the panel drawn from the Committee on School Liability.

**E.**    **Committee Panel Decision and Notice to School:** The Committee Panel will make its decision based on the evidence of record and then notify the school in writing of the Committee's decision. If the educational institution is found liable for an overpayment, it also will be notified of the right to appeal the decision to the School Liability Appeals Board within 60 days from the date of the letter.

**F.**    **Appellate Procedures:** A school may appeal an adverse decision to the School Liability Appeals Board in Washington, DC. The Appeals Board may affirm, modify, or reverse a decision of the Committee on School Liability or may remand an appeal for further consideration by the appropriate Committee on School Liability.

---

[12] The M22-4 Manual also specifies that the panel is to be made up of three persons, and that the school "may challenge the qualifications of proposed panel members." M22-4 Manual, Part 1, Chapter 7 School Liability, § 7.03.

Page 16 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

G.    **Finality of Decisions:** The VA's regulations note that "[t]here is no right of additional administrative appeal of a decision of the School Liability Appeals Board." *See* 38 C.F.R. § 21.4009. *See also* M22-4 Manual, Part 1, Chapter 7 School Liability.

57.    PCC has requested multiple times that it be afforded the School Liability Process for the Alleged Tuition/Fees Debt. Instead, the VA has taken the position that the Alleged Tuition/Fees Debt is not subject to the School Liability Process and that it can internally decide, without review, that PCC owes more than $6 million.

## The Second Alleged Debt by the VA

58.    Separate from the Alleged Tuition/Fees Debt, the VA has continued its pattern of arbitrary, capricious, and unconstitutional action with regard to the related housing and book allowances.

59.    On February 25, 2019, the VA issued a "Notice of Intent of Referral" to PCC, which alleges an additional overpayment of $473,684.10, and which seeks reimbursement for funds paid directly to PCC students for housing and books (the "Second Alleged Debt").

60.    For unknown reasons, the VA acknowledges that the School Liability Process actually applies to the Second Alleged Debt, but still takes the position that the School Liability Process does not apply to the Alleged Tuition/Fees Debt.

## The VA's Arbitrary and Capricious Conduct

61.    Regardless, the VA's arbitrary determination that it overpaid PCC is laden with factual mistakes, and the so-called process the VA followed is riddled with procedural errors. PCC has responded to the VA, specifically identified the errors in the VA's findings, and repeatedly requested that the VA follow the administrative review process—the School Liability

4864-9272-3203.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

Process—that was created by the VA specifically to address disputes between educational institutions and the VA.

62.    Nevertheless, the VA has steadfastly refused to follow this required review process, and instead, has continued to issue erroneous, inconsistent, and contradictory debt notices. The clear factual mistakes that the VA has made could have and should have been resolved easily through appropriate administrative review. Instead, the VA either ignored or postponed PCC's requests to engage in a review process.

**The VA's Broken Promise to Stop the Collection of the Alleged Tuition/Fees Debt**

63.    In 2018, PCC responded and lodged individual disputes to *each* of the DMC Letters, all denying the alleged debt. Specifically, PCC disputed the alleged debts, requested immediate termination of the collection of the alleged debts, and requested records associated with each alleged debt, a pre-hearing conference, and a hearing. A meeting was later held between representatives of PCC and the VA on November 7, 2018, to discuss approximately eight students within the March 2018 Report.

64.    On December 21, 2018, PCC sent the VA and DMC a follow up letter to continue to dispute the alleged debts and provide additional documentation related to the categories of alleged violations. The letter outlined: (1) the VA's failure to notify PCC of the specific reasons for the alleged debts; (2) the VA's failure to follow its own laws and procedures under 38 U.S.C. § 3685 and 38 C.F.R. § 21.9695; (3) PCC's dispute of the April 2017 Compliance Survey and March 2018 Report; (4) PCC's compliance with guidance and specific instructions provided by the SAA, to whom the VA had delegated authority; and (5) PCC's specific responses to the alleged noncompliance categories in the Compliance Survey.

Page 18 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

65.     PCC never received a response to their letter dated December 21, 2018.

66.     From December 21, 2018, to December 2020, PCC provided additional information to the VA and continued to dispute all of the alleged debt.

67.     On January 19, 2021, in response to PCC's repeated disputes related to the alleged debt, the VA's Chief of Operations of the VA's Debt Management Center issued a letter to PCC stating: "After receiving guidance from the VA Office of General Counsel and VA Education Service, DMC suspended all collection action on debts owed by Portland Community College due to the compliance survey. Collection action will remain suspended until further guidance is received." A true and correct copy of this letter (the "Suspended Alleged Debt") is attached as Exhibit 2.

68.     Since then, the VA has not provided PCC with any notice that the Suspended Alleged Debt was going to be activated again.

69.     At some point after the VA's letter dated January 19, 2021, the VA broke its agreement with PCC and transferred the alleged debt to the Treasury for collection. PCC received no letters or notice that the Suspended Alleged Debt was transferred to the Treasury.

70.     On October 25, 2021, PCC learned that the Treasury had offset over $1.8 million from funds to PCC from the American Rescue Plan Act of 2021 (the "American Rescue Plan"). The American Rescue Plan is a COVID-19 relief fund that goes directly to colleges and universities to support the overwhelming costs that institutions and students face in dealing with the COVID-19 pandemic. Institutions like PCC that receive American Rescue Plan funds are required to spend at least half of their allocations on emergency financial aid grants to students.[13]

---

[13] *American Rescue Plan of 2021: Simulated Distribution of Higher Education Emergency Relief*

4864-9272-3203.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

71.    PCC later received confirmation that the offset was related to the alleged

debt to the VA. PCC immediately contacted the VA's Office of General Counsel seeking an

explanation for why the VA had breached its agreement to suspend collection of the alleged debt

and why the VA had failed to respond to PCC's requests that the alleged debt be subject to the

School Liability Process.

72.    Despite PCC's numerous phone calls and emails to the VA, it has not

received any: (a) explanation from the VA for why the debt was transferred to the Treasury; (b)

assurance that the offsets would cease; (c) agreement to return the $1.8 million that was offset

from PCC's grant; and (d) decision on whether the VA would begin following the procedures

outlined for the School Liability Process.

73.    PCC engaged the VA further via emails and phone calls asking for some

process to challenge the VA's mistaken findings, improper transfer of the alleged debt, and

improper offset of over $1.8 million that PCC is entitled to receive. As of the date of this filing,

the VA has not provided any substantive response or decision to PCC.

74.    PCC brings this action to protect itself from the VA's arbitrary and

capricious debt notices and corresponding collection efforts, and the Treasury's improper

offsetting of PCC's federal funds.

75.    The VA is required to notify the Treasury "immediately of any change in

the status of the legal enforceability of the debt." 31 C.F.R. § 285.12(i). On information and

---

*Funds*, American Council on Education,
https://www.acenet.edu/Policy-Advocacy/Pages/HEA-ED/ARP-Higher-Education-Relief-Fund.aspx (last visited Nov. 9, 2021).

4864-9272-3203.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

belief, the VA has not notified the Treasury that the alleged debt is legally enforceable, and the VA has taken no steps to stop the Treasury from offsetting or collecting the alleged debt.

76.     Moreover, the VA's transfer of the alleged debt to the Treasury violated 31 C.F.R. § 285.12(i), which provides "[b]efore a debt may be transferred to Fiscal Service or another debt collection center, the [VA] must certify, in writing, that the debts being transferred are valid, legally enforceable, and that there are no legal bars to collection." As part of that certification, the VA must certify that it has "complied with all prerequisites to a particular collection action under the laws, regulations or policies applicable to the agency unless the creditor agency has requested, and Fiscal Service has agreed, to do so on the [VA's] behalf."

77.     Further, 31 C.F.R. § 285.12(c)(2) provides that "[w]here * * * a debt is the subject of a pending administrative review process required by statute or regulation and collection action during the review process is prohibited, the debt is not considered legally enforceable for purposes of mandatory transfer to Fiscal Service and is not to be transferred." Because the VA had not complied with the prerequisite School Liability Process and the alleged debts were subject to administrative review, the VA could not have certified that PCC's alleged debts were "legally enforceable."

78.     By PCC initiating this action, the VA and Treasury are also now subject to 31 U.S.C. § 3711 and 38 C.F.R. § 1.910, pursuant to which the VA may not refer any of PCC's alleged debts to the Treasury, and the Treasury must cease any collection or offset efforts because the alleged debt is "in litigation." Should the VA or Treasury fail to comply with 31 U.S.C. § 3711 and 38 C.F.R. § 1.910, PCC reserves its right to amend this Complaint to include violations of 31 U.S.C. § 3711 and 38 C.F.R. § 1.910.

Page 21 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

79.     The VA's and the Treasury's actions leave PCC with no option but to seek judicial intervention under the APA. PCC seeks: (1) an order requiring the VA to provide PCC with its due process rights under the School Liability Process with respect to all alleged overpayments—for tuition as well as housing and book allowances—and enjoining Defendants, and their successors and agents, from taking action to collect the alleged approximately $6 million (or any amount) in overpayments until the VA has met its due process obligations to PCC; (2) a declaration that the VA's conclusion that PCC owes approximately $6 million (or any amount) in overpayments related to its aviation programs is arbitrary, capricious, and in violation of PCC's right to due process of law; and (3) the return of the over $1.8 million that the Treasury has improperly offset from grants to PCC.

## FIRST CLAIM FOR RELIEF

### Administrative Procedure Act - Arbitrary and Capricious re School Liability Process

### (Against the VA and Denis McDonough)

80.     PCC incorporates the above paragraphs.

81.     The APA, 5 U.S.C. § 706, authorizes this Court to set aside and hold unlawful agency action that is arbitrary and capricious, including when an agency adopts a course of action that is contrary to its own regulations.

82.     The VA's conclusion that PCC owes approximately $6 million (or any amount) in overpayments related to its aviation programs was reached in contravention of its own regulations.

83.     In administering the G.I. Bills and assessing and collecting overpayments under 38 U.S.C. § 3685, the VA is bound by its own regulations at 38 C.F.R. § 21.4009.

Page 22 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

84.    Pursuant to 38 C.F.R. § 21.4009, the VA may not hold a school liable for a supposed overpayment before the case is referred to the VA's Committee on School Liability. *Id.* The Secretary of Veterans Affairs has "delegate[d] to each Committee on School Liability, and to any panel that the chairperson of the Committee may designate and draw from the Committee, the authority to find whether an educational institution is liable for an overpayment." *Id.*

85.    The School Liability Process is designed to identify and reverse the kinds of blatant mistakes found in the VA's "findings" letters so that institutions like PCC are provided due process of law *before* their alleged overpayment debt is assessed and transferred to the Treasury for collection. That process is supposed to include a number of procedural steps.

86.    First, the Education Officer will "decide whether there is evidence that would warrant a finding that an educational institution is potentially liable for an overpayment." 38 C.F.R. § 21.4009. Second, after any finding of potential liability, the Finance Officer will compute the potential liability and notify the school in writing of the amount and of its rights under the school liability procedures. *Id.* Third, the school is then entitled to a prehearing conference (unless waived) and a hearing before a panel drawn from the Committee on School Liability before a decision is made on liability for an overpayment. *Id.* Fourth, the Committee Panel will make its decision based on the evidence of record, and notify the school of its decision in writing; if found liable for an overpayment, the school will also be notified of its right to appeal the decision to the School Liability Appeals Board within 60 days. *Id.* Fifth, the school has the right to appeal any adverse finding of overpayment liability to the School Liability Appeals Board, which may "affirm, modify or reverse a decision of the Committee on School

4864-9272-3203.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

Liability or may remand an appeal for further consideration by the appropriate Committee on School Liability." *Id.*

87.    Here, for the Alleged Tuition/Fees Debt, the VA denied PCC each and every one of these procedural rights.

88.    After PCC repeatedly informed the VA that it was entitled to protest under the School Liability Process, the VA refused to implement that process for the Alleged Tuition/Fees Debt. However, the VA did acknowledge correctly that the School Liability Process applied to the alleged housing and book overpayments. This inconsistency demonstrates that the VA knows and understands that it should have implemented the School Liability Process with regard to all of the alleged overpayments.

89.    Accordingly, all of the VA's findings resulting from that process are arbitrary and capricious, contrary to its own regulations, and must be set aside.

90.    As a result of the VA's conduct, PCC has suffered and will continue to suffer irreparable injury.

## SECOND CLAIM FOR RELIEF

### Administrative Procedure Act - Unconstitutional Action Under the Due Process Clause

### (Against all Defendants)

91.    PCC realleges and incorporates the above paragraphs.

92.    Under the Due Process Clause of the Fifth Amendment, the government may not deprive PCC of a protected property or liberty interest without due process of law.

4864-9272-3203.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

93.    PCC has a constitutionally protected property interest in Post-9/11 G.I. Bill funding that it has already received and has properly spent on tuition for aviation training, and on housing and book allowances for its veteran students.

94.    The VA has also improperly referred approximately $6 million in alleged tuition overpayments to the Treasury, and inaccurately certified that the alleged debt was "legally enforceable" in accordance with 31 C.F.R. § 285.12(i).  The VA also failed to provide the required notices to PCC as alleged above, including failing to provide the proper notice to PCC that an offset would be occurring.

95.    As a result, the Treasury has improperly offset over $1.8 million from PCC's COVID-19 relief funds.

96.    PCC has a constitutionally protected property interest in its tax refunds and other properly allocated federal funding that the Treasury may seek to garnish.

97.    The process by which the VA concluded that PCC owes approximately $6 million (or any amount) in tuition, and housing and book allowance overpayments is unconstitutional because it did not afford PCC with the due process required by the Fifth Amendment to the United States Constitution. The VA did not provide PCC with any evidentiary hearing or access to an agency appellate review. If PCC had access to procedures to trigger a review, some responsible person or panel would have evaluated PCC's file and reached the only reasonable conclusion: that the VA's findings are inaccurate and must be set aside. Requiring the VA to give PCC additional procedural safeguards would not impose additional fiscal or administrative burdens on the VA. PCC simply seeks the procedures that the VA promulgated itself and is obligated to provide. *See* 38 C.F.R. § 21.4009.

Page 25 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

98.     As a result of the VA's and the Treasury's conduct, PCC has suffered and will continue to suffer irreparable injury.

### THIRD CLAIM FOR RELIEF

### Administrative Procedure Act - Re Findings of the March 2018 Report

### (Against the VA and Denis McDonough)

99.     PCC realleges and incorporates the above paragraphs.

100.     The APA, 5 U.S.C. § 706(2)(A), authorizes this court to set aside and hold unlawful agency action that is arbitrary and capricious.

101.     Here, the VA's letters fail to provide an adequate explanation for the VA's findings. Further, the explanations set forth in the 2018 March Report, are likewise inadequate. An agency's findings must be accompanied by an adequate explanation, *see FEC v. Rose*, 806 F.2d at 1088, "including a 'rational connection between the facts found and the choice made,'" *Motor Vehicle Mfrs. Ass 'n of US., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency must be able to provide the "essential facts upon which the administrative decision was based" and explain what justifies the determination with actual evidence beyond a "conclusory statement." *United States v. Dierckman*, 201 F.3d 915, 926 (7th Cir. 2000) (quoting *Bagdonas v. Dep't of the Treasury*, 93 F.3d 422, 426 (7th Cir. 1996)).

102.     PCC has already rebutted all of the findings in the VA's letters, and the VA's overpayment notices fail to meet the required standard. Thus, the VA's ultimate determination that PCC owes approximately $6 million (or any amount) in overpayments must be set aside. *See* 5 U.S.C. § 706(2)(A).

4864-9272-3203.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

## FOURTH CLAIM FOR RELIEF

### Promissory Estoppel – Promise to Suspend Collection of Alleged Debts

### (Against the VA and Denis McDonough)

103.    PCC realleges and incorporates the above paragraphs.

104.    In its letter dated January 19, 2021, the VA clearly and unambiguously promised PCC that the VA had "suspended all collection action on debts owed by Portland Community College due to the compliance survey," and that the collection action "will remain suspended" pending further guidance. *See* Exhibit 2.

105.    PCC reasonably relied upon the VA's promise to suspend collection of the alleged debt and forebear filing suit against the VA and the Treasury, which would have re-categorized the alleged debt as "in litigation," and disallowed any collection of the alleged debts under 31 U.S.C. § 3711(g)(2)(A)(i) and 38 C.F.R. § 1.910(b)(1).

106.    But for PCC's reliance on the VA's promise, PCC would have filed suit in January 2021 to prevent the VA from referring the alleged debts to the Treasury, and stopped the Treasury from offsetting over $1.8 million from PCC's federal grant funds.

107.    The VA expected or should have expected PCC to rely upon the VA's promise to suspend collection of the alleged debts.

108.    As a result of PCC's reliance on the VA's promise, PCC has been damaged in an amount of no less than the over $1.8 million that the Treasury offset from PCC, as well as the balance of the alleged debt that is currently in danger of being offset by the Treasury.

Page 27 -    Complaint

4864-9272-3203.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

## FIFTH CLAIM FOR RELIEF

### Promissory Estoppel – Approval of PCC's Aviation Programs

### (Against the VA and Denis McDonough)

109.    PCC realleges and incorporates the above paragraphs.

110.    At all times relevant, and from 2014 to April 27, 2017, both the Oregon's SAA and the VA approved the PCC Aviation Programs.

111.    PCC reasonably relied upon the Oregon's SAA and the VA's approval of the PCC Aviation Program when it certified and enrolled new veteran students into the PCC Aviation Program and those veterans received Post-9/11 G.I. Bill funding.

112.    The VA expected or should have expected PCC to rely upon the VA's approval of the PCC Aviation Program.

113.    Despite approving the PCC Aviation Program, the VA is now arguing that the PCC Aviation Program should not have been approved to receive Post-9/11 G.I. Bill funding, and the VA is attempting to recoup the Post-9/11 G.I. Bill funding for those veteran students who were enrolled in the PCC Aviation Program.

114.    As a result of PCC's reliance on the VA's approval of the PCC Aviation Program, PCC has been damaged in an amount of approximately $6 million, the amount the VA is now claiming that PCC was overpaid in Post-9/11 G.I. Bill funding.

## SIXTH CLAIM FOR RELIEF

### Breach of Contract

### (Against the VA and Denis McDonough)

115.    PCC realleges and incorporates the above paragraphs.

4864-9272-3203.5

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

116.     In its letter dated January 19, 2021, the VA clearly and unambiguously expressly agreed that it had "suspended all collection action on debts owed by Portland Community College due to the compliance survey," and that the collection action would "remain suspended" pending further guidance. *See* Exhibit 2.

117.     In consideration for and in reliance on the VA's agreement that it would suspend all collection action on the alleged debts, PCC did not file suit against and the VA and the Treasury, which would have re-categorized the alleged debt as "in litigation," and disallowed any collection of the alleged debts under 31 U.S.C. § 3711(g)(2)(A)(i) and 38 C.F.R. § 1.910(b)(1).

118.     The VA breached the agreement by transferring the alleged debt to the Treasury resulting in the offset of over $1.8 million from PCC's federal grant funds.

119.     But for PCC's reliance on the VA's promise, PCC would have filed suit in January 2021 to prevent the VA from referring the alleged debts to the Treasury, and stopped the Treasury from offsetting over $1.8 million from PCC's federal grant funds.

120.     As a result of the breach of the VA's promise, PCC has been damaged in an amount of no less than the over $1.8 million that the Treasury offset from PCC, as well as the balance of the alleged debt that is currently in danger of being offset by the Treasury.

## SEVENTH CLAIM FOR RELIEF

### Injunction to Cease Debt Collection Activity and Return of Offset Funds

### (Against the Treasury, Janet Yellen, the Fiscal Service, and Timothy Gribben)

121.     PCC realleges and incorporates the above paragraphs.

Page 29 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

122.    By failing to administer the School Liability Process with respect to all alleged overpayments for tuition as well as housing and book allowances, the VA deprived PCC of its constitutionally protected interest in Post-9/11 G.I. Bill funding that PCC had received and properly spent on tuition for aviation training, and housing and book allowances for PCC's veteran students.

123.    As a direct result of that due-process violation, the VA improperly referred approximately $6 million in alleged tuition overpayments to the Treasury and inaccurately certified that the alleged debt was "legally enforceable" in accordance with 31 C.F.R. § 285.12(i). The VA and the Treasury also failed to provide the required notices to PCC as alleged above, including failing to provide the proper notice to PCC that an offset would be occurring.

124.    Due to the VA's improper referral of the alleged debt to the Treasury, the Treasury offset over $1.8 million from funds that PCC was entitled to receive under the American Rescue Plan.

125.    In accordance with the American Rescue Plan requirements, PCC had planned to provide—and its students were relying on—the over $1.8 million in emergency financial aid grants that the Treasury has withheld from PCC students.

126.    As a result of the Treasury's over $1.8 million offset, PCC will suffer immediate and irreparable injury because many PCC students relying upon the grant's emergency financial aid funds will be unable to continue their education at PCC without that critical financial assistance.

Page 30 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

127.    Given that PCC's students' education is in immediate jeopardy, PCC seeks a court order requiring the speedy release of the over $1.8 million American Rescue Plan funds that have been improperly withheld by the Treasury.

128.    PCC also seek injunctive relief to stop the Treasury from taking any further debt collection action, including without limitation the offset of grant funds that PCC is otherwise entitled to because the alleged debt is now "in litigation." *See* 31 U.S.C. § 3711(g)(2)(A)(i) and 38 C.F.R. § 1.910(b)(1).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court:

1.    Order the VA to provide PCC with its due process rights under the School Liability Process with respect to all alleged overpayments—for tuition, as well as housing and book allowances—and enjoin Defendants, and their successors and agents, from collecting the alleged approximately $6 million (or any amount) in overpayments until the VA has met its due process obligations to PCC;

2.    Declare that the VA breached its agreement with PCC to not collect the alleged debts;

3.    Declare that Defendants' conclusion that PCC owes approximately $6 million (or any amount) in overpayments related to its aviation programs was arbitrary and capricious, and in violation of PCC's right to due process of law under the Fifth Amendment to the United States Constitution;

Page 31 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204

4.     Order the Treasury and the VA to immediate return over $1.8 million offset from PCC's American Rescue Plan grant;

5.     An award of pre-judgment and post-judgment interest;

6.     Order the DMC and the Treasury to halt any further collection or offset efforts of PCC's alleged debt;

7.     For an award of fees, costs, and attorney fees; and

8.     Such other and further relief as this Court may deem just and proper.

DATED this 15th day of November, 2021.

MILLER NASH LLP

*/s/ Stacey A. Martinson*

Stacey A. Martinson, P.C., OSB No. 074708
stacey.martinson@millernash.com
Vanessa T. Kuchulis, OSB No. 154387
vanessa.kuchulis@millernash.com
Phone: 503.224.5858 │ Fax: 503.224.0155

*Attorneys for Plaintiff Portland Community College*

Page 32 -    Complaint

MILLER NASH LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
US BANCORP TOWER
111 SW FIFTH AVE, STE 3400
PORTLAND, OR 97204