UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND COMMUNITY COLLEGE,

                Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS, and DENIS
MCDONOUGH, *in his capacity as Secretary
of the U.S. Department of Veterans Affairs*,

                Defendants.

Case No. 3:21-cv-01658-AR

**FINDINGS AND
RECOMMENDATION**

_____

**ARMISTEAD, Magistrate Judge**

       Plaintiff Portland Community College (PCC) brings this action against defendant U.S.

Department of Veterans Affairs and its Secretary, Denis McDonough (collectively, the VA), to

challenge the VA's efforts to recover aviation program-related tuition payments that it paid to

PCC under the Post 9/11 G.I. Bill. PCC contends that the VA retroactively revoked its approval

of PCC's aviation programs, illegally withheld $1.8 million in funding through the Treasury

Page 1  – FINDINGS AND RECOMMENDATION

Offset Program (TOP), and now seeks to hold it responsible for $5.6 million in tuition and fees without providing PCC an administrative procedure called the School Liability Process (SLP), 38 U.S.C. § 3685 and 38 C.F.R. § 21.4009. PCC contends that the VA's actions are arbitrary and capricious under the Administrative Procedure Act (APA), 5 U.S.C. § 706, and violate its due process rights under the Fifth Amendment. PCC also seeks injunctive relief preventing further collection activity until the matter is resolved. The VA contends that because the tuition and fees were paid directly to PCC, not to the veteran students, the SLP is not mandatory or applicable. The VA also contends that the monies offset have been refunded to PCC and it has agreed to provide the SLP for the disputed debts, and that PCC should be required to use that process.

Before the court is the VA's motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), which contends that PCC's claims must be dismissed because the APA claims lack a final agency action, the due process claim is unexhausted and unripe, and this action is moot. As explained below, the VA's motion should be denied.

## BACKGROUND

A.    ***Statutory and Regulatory Background***

1.    **VA Benefits at Issue and Overpayments**

Under the Post 9/11 Veteran Educational Assistance Act of 2008 (Post-9/11 G.I. Bill), eligible veterans (or their dependents) who served in active military duty after September 11, 2001, may receive certain education benefits. 38 U.S.C. § 3311 (a)-(b). The education benefits include tuition and money for housing and books. 38 U.S.C. § 3313. The VA pays money for housing and books directly to veteran students and pays tuition benefits "directly to the educational institution concerned." 38 U.S.C. § 3313(h). Veteran students may use the education

benefits for certain courses and programs approved by State Approving Agencies (SAA's), including flight training. 38 U.S.C. §§ 3313(b), (g)(3)(C); 38 U.S.C. § 3672(a). In Oregon, the Higher Education Coordinating Commission served as the SAA until October 1, 2018, when the VA terminated its contract with Oregon's SAA. (SAC ¶ 3.)

The VA generally may recover overpayments of benefits paid to veterans through various processes. 38 U.S.C. § 3685; 38 C.F.R. § 1.911(a); 38 C.F.R. § 1.911a (providing for collection of non-benefit debts). Under 38 C.F.R. § 1.911(a), the VA may recover "debts resulting from an individual's participation in a VA benefit" or home loan program. 38 U.S.C. § 1.911(a). That process includes written notice of the amount of the debt owed, the reasons for the debt, the right to request waiver of collection of the debt, the right to a hearing on the waiver request, and the right to appeal the VA's decision underlying the debt. Id. §§ 1.911(c)-(d).

The VA provides a separate process – the SLP – for "school liability debts" owed by eligible veterans that is governed by 38 U.S.C. § 21.4009. Section 21.4009 provides that overpayments of "educational assistance allowance or special training allowance" paid directly to veterans are the liability of the veterans and that the overpayments may become the "liability of the education institution" if the VA determines that the overpayments resulted from the institution's willful or negligent failure to report or false certification of certain information pertaining to those veterans' enrollment. 38 C.F.R. §§ 21.4009(a)(1)-(2). Under the SLP, a Committee on School Liability (Committee) determines liability through a process that includes additional steps compared to the process provided in § 1.911. Those steps include "(1) a prehearing conference to discuss the record upon which potential liability is based; (2) a hearing with testimony and evidence before a panel of the Committee; (3) a written decision by the

Committee; and (4) if the school disagrees with the Committee's decision, an appeal of any legal or factual errors to the School Liability Appeals Board, which can reverse, affirm, modify, or remand the Committee's decision." *Klamath Comm. Coll. v. U.S. Dep't of V.A.*, Case No. 1:21-cv-01700-CL, 2022 WL 12075908, at *1 (D. Or. Sept. 22, 2022), *adopted*, 2022 WL 11811086 (Oct. 20, 2022) (citing 38 C.F.R. § 21.4009 and VA Manual M22-4 Part 1 §§ 7.09-7.12).

### 2. Treasury Offset Program

Congress requires federal agencies to refer nontax debts owed to any federal agency to United States Department of Treasury (the Treasury) for collection. 31 U.S.C. §§ 3716(c)(6), 3720A(a). To collect referred debts, the Treasury, through its Bureau of Fiscal Service, administers a centralized Treasury Offset Program (TOP). 31 C.F.R. § 285.5(a)(1). TOP reviews payees (persons entitled to a government payment) to see if they have referred debts. *See id.* § 285.5(b)-(d). If they do, the Treasury offsets payment to the payee and pays that amount to the creditor agency. *Id.* §§ 285.5(f)-(j).

Creditor agencies trying to collect from payees must comply with certain procedures before referring the debt to TOP. Those procedures include giving the debtor: (1) written notice of the type and amount of the claim, the intention of the head of the agency to collect the claim by administrative offset, and an explanation of the rights of the debtor under this section; (2) an opportunity to inspect and copy the records of the agency related to the claim; (3) an opportunity for a review within the agency of the decision of the agency related to the claim; and (4) an opportunity to make a written agreement with the head of the agency to repay the amount of the claim. 31 U.S.C. §§ 3716(a)(1)-(4); 31 U.S.C. § 3720A(b)(1). "After creditor agencies complete these efforts without resolution of the debt, Treasury will notify the debtor of the offset, the

identity of the requesting creditor agency, and who to contact within the creditor agency about

the offset." *Klamath Comm. Coll.*, 2022 WL 12075908, at *2 (citing 31 U.S.C. § 3716(c)(7) and

31 C.F.R. § 285.5(g)(3)).

### B.    *Factual Background*

Some PCC students receive education benefits under the Post-9/11 G.I. Bill. (SAC ¶ 2.)

PCC offered several aviation programs, including Aviation Science: Aviation with Flight

Instructor; Aviation Science: Airplane without Fight Instructor; and Aviation Science: Helicopter

(PCC Aviation Programs). (SAC ¶¶ 25, 31.) In order to use the Post-9/11 G.I. Bill education

benefits, the courses must be approved. (SAC ¶ 24.) PCC's Aviation Programs were approved by

Oregon's SAA and the VA from 2002 to April 2017. (SAC ¶¶ 25-26; Decl. Jeffrey J. DeMott

Opp'n Defs.' Mot. Dismiss ¶ 5, ECF No. 32.)

Although the date varies by year, the VA conducts "Annual Compliance Surveys" of the

programs and recipients receiving benefits from the Post-9/11 G.I. Bill. 38 U.S.C. § 3693; (SAC

¶ 27.) From 2012 through 2016, PCC's Annual Compliance Surveys did not reveal any material

discrepancies in its aviation programs or overpayments of Post-9/11 G.I. Bill benefits. (SAC ¶

31.) On April 18, 2017, the VA conducted a compliance survey related to PCC's Aviation

Programs. (SAC ¶ 33; DeMott Decl. ¶ 7, ECF No. 32.) On April 27, 2017, the VA directed

Oregon's SAA to suspend approval of PCC's aviation programs. (DeMott Decl. ¶ 8.)

On January 18, 2018, the VA sent a letter to PCC citing eleven categories of errors, but it

did not identify any specific students or specific overpayments. (SAC ¶ 38.) In March 2018, the

VA sent a letter to PCC stating that 200 students were audited in the April 2017 compliance

survey (the March 2018 Report). (SAC ¶ 39, DeMott Decl. ¶ 10.) The March 2018 Report did

not inform PCC of any liability associated with the students or that the VA intended to hold PCC liable for overpayments. (DeMott Decl. ¶ 10.) The March 2018 Report also did not inform PCC of its rights under the SLP or that a Committee had been formed. (SAC ¶ 39.)

In May 2018, PCC began to receive many letters from the VA's Muskogee Regional Office stating that PCC was liable for tuition overpayments of Post-9/11 G.I. Bill benefits for veteran students (Muskogee letters). (Decl. DeMott ¶ 11 & Ex. 1 (attaching sample Muskogee letter).) In one Muskogee letter dated May 23, 2018, the VA states that it released tuition and fee payments to PCC for a particular student's enrollment periods in 2016 and early 2017 – periods previously approved by the VA and SAA. (*Id.* Ex. 1; SAC ¶ 43.) That letter also stated that because PCC submitted "an amended 1999 showing a reduction in tuition and fee charges or a reduction in Yellow Ribbon amount, or both," PCC must return the overpayments. (*Id.* Ex. 1; SAC ¶ 43.) In most cases, however, PCC had not submitted an amended 1999 for that veteran student, so the VA's reason for the debt was inapplicable. (SAC ¶ 43.)

On June 6, 2018, the VA's Debt Management Center (DMC) sent letters to PCC stating it notified PCC that education benefits had been "adjusted due to non-entitlement" and that because the payments were sent directly to the school, it was asking PCC to return the funds. (DeMott Decl. Ex. 2; SAC ¶ 45.) The DMC letters also stated that if the debt remained unpaid, the account could be referred for offset under the TOP. (DeMott Decl. Ex. 2.) PCC received hundreds of Muskogee and DMC letters seeking repayment of about $5.6 million in tuition and fees (Tuition Overpayments). (DeMott Decl. ¶ 14; SAC ¶ 47.)

PCC responded to each of the DMC letters, denying that the Tuition Overpayments were owed, asking that the VA suspend collection attempts and provide requested records, and

demanding a pre-hearing conference and a hearing. (DeMott Decl. ¶ 15.) In November 2018, the

VA and PCC met to discuss eight students in the March 2018 Report. (DeMott Decl. ¶ 17.) On

December 21, 2018, PCC sent the VA and the DMC a letter (the December 2018 Letter)

disputing the alleged tuition and fees, contending that PCC had not been provided detail about

why it was being held liable for the Tuition Overpayments, and demanding that the SLP be

provided. (DeMott Decl. ¶ 18.) The VA did not respond to the December 2018 Letter. (DeMott

Decl. ¶ 19.)

On January 19, 2021, Julie Lawrence, the Chief of Operations Officer at the VA's DMC,

sent a letter to PCC: "[a]fter receiving guidance from the VA Office of General Counsel and VA

Education Service," all collection actions based on "compliance survey" were suspended and

"will remain suspended until further guidance is received." (SAC ¶ 67 & Ex. 2, ECF No. 21-2.)

Notwithstanding the January 2021 letter from Lawrence, on February 25, 2019, the VA's

Muskogee Regional Office sent PCC a "Notice of Intent of Referral" to the Committee on

School Liability to decide "whether to hold [PCC] liable for certain overpayments of VA

educational benefits." (DeMott Decl. ¶ 20 & Ex. 3.) The February 2019 demand sought

$473,684.10 in alleged overpayments to students for housing and books (Housing

Overpayments). (DeMott Decl. ¶ 20.) And, on October 25, 2021, PCC learned that the Treasury

offset $1.8 million in funds through TOP that PCC was set to receive from the American Rescue

Plan Act of 2021. (SAC ¶ 70.)

On October 27, 2021, PCC's counsel emailed the VA indicating that it was aware that

another Oregon community college, Central Oregon Community College (COCC), had filed a

lawsuit asserting the same issues and that the VA had agreed to follow the SLP. On November 15, 2021, PCC filed this action. (Compl., ECF No. 1.)

On November 17, 2021, the VA sent a letter to PCC dated November 15, 2021, in which the VA agreed to use the SLP for debts arising out of the April 2017 compliance survey, whether the overpayments were made to PCC or to the students.[1] (Decl. of Stacey Martinson Opp'n Defs.' Mot. Dismiss Ex. 4, ECF No. 31.) In that letter, the VA stated that the "next step in the SLP" was the prehearing conference described in 38 C.F.R. § 21.4009(e). (*Id.*) The VA also explained that the October 2021 Treasury offset of $1.8 million related to about 50 students arising out of the April 2017 compliance survey. (*Id.*) The VA agreed to "refund and then reestablish" the PCC debts that were offset by TOP in October 2021, "after which it will apply the SLP and applicable collection authority from this point forward regardless of whether a particular debt is based on a payment to the school or student." (*Id.*) Between November 20 and November 29, 2021, the VA refunded to PCC more than $1.8 million that was offset through TOP, and in February 2022, the VA refunded nearly $700 in fees. (Decl. Julie Lawrence Supp. Defs.' Mot. Dismiss ¶ 4, ECF No. 25.) Currently, none of the Alleged Overpayments are referred to TOP for collection. (*Id.* ¶ 5.)

**C.**     ***The VA's Disputes with Other Oregon Community Colleges***

PCC is not the only Oregon community college to request that the VA apply the SLP for recovery of alleged aviation-related tuition overpayments. On April 10, 2020, COCC sued the VA demanding that the VA provide the SLP for all alleged overpayments of tuition, books, and

---

[1]     Although it appears the parties distinguish between sums paid to PCC resulting in Tuition Overpayments and sums paid to veteran students leading to Housing Overpayments, in this F&R, the court refers to the sums collectively as the Alleged Overpayments.

housing. *See COCC v. VA*, Case No. 6:20-cv-00594-MK, Compl. at 27, ECF No. 1. As in this case, the VA denied that COCC's tuition overpayments should be submitted to the SLP because the tuition payments were made directly to COCC. The VA agreed, however, to refer the alleged tuition overpayments made directly to COCC to the SLP because those debts involved overlapping issues with the payments made directly to students. *Klamath Comm. Coll.*, 2022 WL 12075908, at *4 (describing litigation between COCC and the VA). To avoid unnecessary litigation, the VA agreed to submit COCC's disputed tuition overpayments to the SLP and to suspend collection of overpayments pending completion of that process. The settlement resolved COCC's lawsuit, and COCC dismissed its action on September 21, 2021. *Id.*

On November 24, 2021, Klamath Community College (KCC) sued the VA, demanding that it provide the SLP for all alleged overpayments of tuition, books, and housing. *Id.* After the VA refunded sums previously offset through TOP, KCC amended its complaint to remove the Treasury. *Id.* On April 29, 2022, KCC filed an amended complaint against the VA, which asserted claims under the APA and Fifth Amendment challenging the VA's efforts to recover the alleged overpayments, and a claim for injunctive relief. *Id.* The VA moved to dismiss KCC's claims. In a September 22, 2022 Findings and Recommendation, Magistrate Judge Mark D. Clarke denied the VA's motion to dismiss. *Id.* at *5-9. No objections to Judge Clarke's F&R were filed, and it was adopted in full by District Judge Ann Aiken on October 20, 2022. *Klamath Comm. Coll.*, 2022 WL 11811086, at *1.

**D.    *This Action***

PCC filed this action on November 15, 2021. (Compl., ECF No. 1.) In March 2022, PCC voluntarily dismissed the Treasury defendants, and on April 4, 2022, filed a Second Amended

Complaint (SAC). (SAC, ECF No. 21.) In the SAC, PCC asserts five claims: (1) the VA acted arbitrarily by failing to provide the full scope of the SLP to assess whether PCC may be held liable for the Alleged Overpayments under the APA, 5 U.S.C. § 706; (2) the VA violated the due process clause of the Fifth Amendment by revoking funding for PCC's Aviation Programs without adequate procedural protections; (3) the VA's March 2018 Report finding it liable for $5.6 million in Alleged Overpayments is arbitrary and capricious under § 706(2)(A); (4) the VA's retroactive disapproval of PCC's Aviation Programs was arbitrary and capricious under § 706(2)(A); and (5) the VA should be enjoined from offsetting or withholding more funds from PCC through the TOP. On April 18, 2022, the VA filed the instant motion.

## LEGAL STANDARDS

### A.    *Lack of Subject Matter Jurisdiction – Rule 12(b)(1)*

Dismissal is appropriate under Rule 12(b)(1) where a court lacks subject matter jurisdiction over a plaintiff's claims. FED. R. CIV. P. 12(b)(1). Federal courts are courts of limited jurisdiction and generally have jurisdiction as authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Courts presume that a case "lies outside this limited jurisdiction"; therefore, the burden of demonstrating subject matter jurisdiction rest with the party asserting it. *Id.*

Jurisdictional attacks under Rule 12(b)(1) may be facial or factual. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2014)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise

invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. When the court is presented with a challenge to its subject matter jurisdiction, "no presumptive truthfulness attaches to a plaintiff's allegations." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (simplified). "In resolving such a motion, a district court may hear evidence regarding jurisdiction and resolve factual disputes where necessary." *Id.* (simplified); *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone*, 373 F.3d at 1039 (providing the court may review evidence beyond the complaint without converting a factual jurisdictional attack into a motion for summary judgment).

**B.      *Failure to State a Claim – Rule 12(b)(6)***

Under Rule 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also CallerID4u, Inc. v. MCI Commc'ns Servs. Inc.*, 880 F.3d 1048, 1061 (9th Cir. 2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017). A court may dismiss "'based on the lack of cognizable legal theory or the absence of sufficient facts alleged'" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). The court must accept as true the allegations in the complaint and construe them in favor of the plaintiff. *Teixeira*, 873 F.3d at 678; *Iqbal*, 556 U.S. at 679.

## DISCUSSION

**A.**     ***The VA's Motion to Dismiss Claims 1, 3 and 4 Under the APA Should be Denied***

PCC alleges three claims under § 706 of the APA. In Claim 1, PCC argues that the VA

acted arbitrarily by finding it owes $5.6 million in Alleged Overpayments related to PCC's

Aviation Programs before providing the full panoply of SLP procedural protections. (SAC ¶¶ 86,

88-89, 91.) In Claim 3, PCC alleges that the VA's explanations for the Alleged Overpayments

owed are inadequate, unlawful, and "must be set aside." (SAC ¶¶ 108-09.) In Claim 4, PCC

asserts that the VA's retroactive disapproval of PCC's Aviation Programs and denial of Post-

9/11 G.I. Bill benefits was arbitrary and capricious under § 706(2)(A). (SAC ¶¶ 111-15.)

The APA provides for judicial review of "agency action." 5 U.S.C. § 702 ("A person

suffering legal wrong because of agency action, or adversely affected or aggrieved by agency

action within the meaning of a relevant statute, is entitled to judicial review thereof."). A

reviewing court will "decide all relevant questions of law, interpret constitutional and statutory

provisions, and determine the meaning or applicability of the terms of an agency action." *Id.* §

706. Under § 706, a court has authority to "compel agency action unlawfully withheld or

unreasonably delayed" and to "hold unlawful and set aside agency actions" that are found to

arbitrary, capricious, or an abuse of discretion. *Id.*; *Al Otro Lado, Inc., v. Mayorkas*, Case No.

17-cv-02366-BAS-KSC, 2021 WL 3931890, at *7 (S.D. Cal. Sept. 2, 2021).

Typically, federal courts lack jurisdiction over APA claims that do not challenge final

agency action. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency

action for which there is no other adequate remedy in a court are subject to judicial review.");

*Gallo Cattle v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998). To be a final agency

action, an agency's decision must meet two criteria. First, the action must be the
"consummation" of the agency's decision-making process, not merely a tentative or interlocutory
decision. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Second, the action must be one by
which "rights or obligations have been determined" or from which "legal consequences will
flow." *Id.* (internal quotation and citation omitted). When applying this test, courts examine
whether the agency's action "amounts to a definitive statement of the agency's position,"
whether it "has a direct and immediate effect on the day-to-day operations" of the subject party,
and whether "'immediate compliance [with the terms] is expected.'" *Or. Nat. Desert Ass'n v.
U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (alteration in original) (quoting *Indus.
Customers of Nw. Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005)). "The
finality element must be interpreted in a pragmatic and flexible manner." *Id.* (simplified).

      The VA moves to dismiss PCC's APA claims under Rule 12(b)(1), contending that the
court lacks subject matter jurisdiction because there is no final agency action under § 706(2). The
VA notes that it has referred the Alleged Overpayments to the SLP and has agreed to be bound
by the Committee's decision. In the VA's view, it therefore has not given its last word on PCC's
liability and there is no final decision, depriving this court of jurisdiction. PCC responds that the
court has jurisdiction to hear each of these claims because it seeks to compel the VA to provide
the entire SLP process under § 706(1), which is an exception to the "final agency action"
requirement.

      "Section 704 of the APA limits judicial review to 'final agency actions,' a standard which
"does not easily accommodate an agency's *failure to act*." *W. Org. of Res. Councils v. Zinke*, 892
F.3d 1234, 1247 (D.C. Cir. 2018) (Edwards, J., concurring); *Al Otro Lado*, 2021 WL 3931890, at

*8 ("There remains confusion over whether the finality requirement applies to § 706(1) 'failure to act' claims."). The Ninth Circuit and district courts within the Ninth Circuit have recognized that an agency's failure to act may be challenged under § 706(1), notwithstanding the absence of a final decision under § 704. *See Al Otro Lado*, 2021 WL 3931890, at *8 ("[T]he Ninth Circuit has given several indications that finality is not a consideration when evaluating § 706(1) claims."); *see also Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) (discussing that § 706(1) permits judicial review of claims asserting agency has failed to take a discrete action that it is required to take). An agency's failure to act "may form the basis of challenge under the APA" and such claims are considered "exception[s] to the final agency action requirement." *ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d 1132, 1137 (9th Cir. 1998).

In Claim 1, PCC seeks to compel the VA to provide the SLP and contends that such process is required under 38 U.S.C. § 3685 and 38 C.F.R. § 21.4009. PCC argues that although the VA has agreed to refer PCC's claims for the Alleged Overpayments to the Committee, it did so only after PCC instituted this action and has offered only a modified version of the SLP. PCC contends that, given the VA's refusal to provide the full SLP process or enable it to challenge the VA's finding that PCC is liable for the Alleged Overpayments, Claim 1 adequately alleges that the VA has failed to act. The court agrees.

In *Klamath Community College*, Judge Clarke addressed a nearly identical challenge and concluded that "[t]he alleged failure of the VA to offer the SLP, or any kind of process for disputing the Tuition Overpayments is an alleged failure to act, which functions as an exception to the requirement for final agency action." *Klamath Comm. Coll.*, 2022 WL 12075908, at *6.

The court agrees with Judge Clarke's rationale and follows it here. Thus, the court concludes that PCC sufficiently alleges that the VA failed to act under § 706(1) and establishes jurisdiction. Consequently, the VA's motion to dismiss claim one should be denied.

Turning to Claims 3 and 4, PCC purports to bring those claims under § 706(2)(A), and thus must assert final agency action. (SAC ¶¶ 106, 109, 111.) PCC has adequately identified several actions by the VA to meet this burden of finality. For instance, PCC received a letter dated May 23, 2018, from the VA's Muskogee Regional Office stating that PCC was liable for the Alleged Overpayments as the result of a compliance survey. (DeMott Decl. Ex. 1 (attaching a sample Muskogee letter).) On June 6, 2018, PCC received a letter from the VA's debt collection division, the DMC, seeking repayment of $114,924.18 due to "non-entitlement." (*Id.* Ex. 2.) On February 25, 2019, PCC received a Notice of Intent of Referral, in which the Muskogee Regional Office stated that it was intending to hold PCC liable for more than $473,000 in Alleged Overpayments of educational assistance benefits. (*Id.* Ex. 3.) At some point after January 21, 2021, the VA transferred at least portions of the Alleged Overpayment debt to the Treasury for collection. (SAC ¶ 69.) Then, on October 25, 2021, the VA offset $1.8 million in funds to PCC that it was to receive from the American Rescue Plan. (SAC ¶ 70.)

PCC alleges that from March 2018 through the date it filed this action, it has disputed the veracity of the Alleged Overpayments, requested records associated with the alleged debts, demanded a prehearing conference, and demanded a hearing – yet it has not received a complete explanation from the VA for its alleged liability. The VA's failure to provide the SLP for more than three years despite PCC's persistent demands is certainly not an interim, tentative, or interlocutory agency position. Thus, the court finds that the VA's communications with PCC

"mark the consummation of the agency's decisionmaking process." *Klamath Comm. Coll.*, 2022 WL 12075908, at *6.

Moreover, the VA's decisions to send at least a portion of the Alleged Overpayment debt to the DMC and then to the Treasury for collection "constitute actions from which legal consequences will flow, signaling that a final decision has been made as to the validity of the debt in the eyes of the agency." *Id.* As Judge Clarke aptly observed, "'[b]efore debts may be transferred to Fiscal Service or another debt collection center, the [VA] must certify, in writing, that the debts being transferred are valid, legally enforceable, and that there are no legal bars to collection.'" *Id.* (quoting 31 C.F.R. § 285.12(i)). Although the VA argues that it has returned the offset funds to PCC, PCC contends that the VA has not yet revoked its certification that the debts are valid and collectible. Thus, the court finds that legal consequences may flow from the VA's actions concerning the alleged debts. *Klamath Comm. Coll.*, 2022 WL 12075908, at *6.

Finally, PCC alleges that on April 20, 2017, the VA sent a letter to Oregon's SAA suspending PCC's Aviation Programs. (SAC ¶ 33.) After briefly reinstating the program, the VA informed PCC in July 2017 that its Aviation Programs again were suspended. (SAC ¶ 37.) It is unclear to the court from the parties' briefing whether approval for PCC's Aviation Programs has been fully reinstated. In any event, withdrawing PCC's funding had an immediate effect on the status of those federally funded programs, from which legal consequences flowed. PCC alleges that the VA is now trying to collect from PCC tuition payments for programs approved prior to 2017. The VA's alleged retroactive disapproval "independently meets the criteria requiring that the decision be one [from] which legal consequences will flow." *Klamath Comm. Coll.*, 2022 WL 12075908, at *6. Thus, the court finds that PCC has adequately demonstrated a final agency

action necessary to establish this court's jurisdiction to hear Claims 3 and 4 under § 706(2)(A), and the VA's motion to dismiss them should be denied.

**B.**      ***The VA's Motion to Dismiss PCC's Due Process Claim Should Be Denied***

In Claim 2, PCC alleges that the VA violated its procedural due process protections guaranteed by the Fifth Amendment when it found PCC liable for about $5.6 million without providing the required administrative process. (SAC ¶¶ 98-104.) The Due Process Clause of the Fifth Amendment provides that persons shall not "be deprived of life, liberty, or property, without due process of law." U.S. CONST. AMEND. V. "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). "Generally, procedural due process requires adequate notice and a meaningful opportunity to be heard at some point before a right or interest is forfeited." *Klamath Comm. Coll.*, 2022 WL 12075908, at *7 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). To possess a property interest in a government benefit, one must have more than "an abstract need or desire for it" or "a unilateral expectation of it"; instead, there must be "a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). As the Ninth Circuit recently observed, the "[k]ey to a property interest determination is whether the person alleging a due process violation has an entitlement to the benefit at issue, conferred through statute, regulation, contract, or established practice." *Armstrong v. Reynolds*, 22 F.4th 1058, 1067 (9th Cir. 2022) (holding Nevada law created limited exception for whistleblowers that supported property interest).

The court finds that PCC has alleged a viable property interest in the funds supporting PCC's Aviation Programs and in the continuation of its previously approved aviation programs, a point unchallenged by the VA. *Klamath Comm. Coll.*, 2022 WL 12075908, at *7. Instead, the VA contends that PCC's due process claim should be dismissed for three primary reasons. First, the VA argues that PCC cannot establish a deprivation because the monies offset by the Treasury have been refunded. (Defs.' Mot. Dismiss at 18.) The court disagrees. PCC alleges that the VA has retroactively revoked approval for funding PCC's Aviation Programs beginning in 2014 and that the VA seeks repayment for PCC students that graduated previously, causing financial and reputational harm. (Pl.'s Opp'n at 27.) And, unlike KCC, it is unclear whether PCC's Aviation Programs have been reinstated or remain suspended. (SAC ¶ 37.) Thus, PCC has sufficiently pleaded a deprivation of constitutional protected property interest under the due process clause.

Second, the VA contends that the SLP provides an ample administrative process, and that PCC cannot bypass that process by filing a constitutional claim. The VA argues that the court should require PCC to exhaust its claims through the SLP it has now offered, including by presenting all substantive and procedural challenges to the Committee, prior to seeking the court's intervention. The VA also argues that PCC's claim is not ripe because the SLP may resolve its claims, and because it has agreed not to collect the Alleged Overpayments "absent a determination of liability of the Committee." (Defs.' Mot. at 19.)

PCC counters that the VA has refused to follow its own rules and regulations set forth in the SLP to establish the validity the Alleged Overpayments in the first instance. In PCC's view, the VA's failure to follow its own procedures has "effectively deprived PCC of any information regarding how and why the VA is claiming that certain PCC veteran students were overpaid."

(Pl.'s Opp'n at 30.) PCC is correct. PCC has been demanding that the VA provide the required full SLP administrative process for nearly three years. Only after PCC filed this action did the VA offer to provide a truncated SLP process. Requiring PCC to exhaust a process that provides something less than the full procedural protections set forth in 38 U.S.C. § 3685 and 38 C.F.R. § 21.4009, simply will not do. The VA's arguments on exhaustion and ripeness are rejected. *Klamath Comm. Coll.*, 2022 WL 12075908, at *7. PCC states a claim for a due process violation because it has been denied adequate procedural protections. *See Colo. v. Veterans Admin.*, 430 F. Supp. 551, 558 (D. Colo. 1977) (holding state and junior colleges were not required to exhaust statutory and constitutional claims with the VA concerning overpayments of educational benefits to veteran students because court was not asked to review specific overpayments and because the VA refused to address those arguments during administrative review, requiring exhaustion would be futile).

　　　　Third, the VA argues that this action is moot. The VA asserts the identical arguments here as it did in *Klamath Community College*, 2022 WL 12075908, at *8. Judge Clarke rejected those arguments, finding that "[s]o long as the VA considers the SLP optional, KCC cannot be assured that it will be given the entirety of the process it claims that it is due under both the APA and the due process clause." *Id.* Judge Clarke also determined:

> Here, the VA has refunded the offset, but it has not relinquished and waived any entitlement to recover the debt. Moreover, KCC raises claims regarding the notices and hearings it was entitled to prior to any determination of the validity of the debt. These claims are not resolved by VA's subsequent actions to grant KCC a refund or the SLP process. KCC's claims are not moot, and VA's motion should be denied.

*Id.* The court finds no reason to stray from Judge Clarke's sound rationale. Accordingly, the court finds that PCC's claims are not moot, and the VA's motion on this basis should be denied.

Page 19 – FINDINGS AND RECOMMENDATION

**C.**  ***VA's Motion to Dismiss PCC's Fifth Claim for Injunctive Relief Should be Denied***

In Claim 5, PCC alleges that the VA should be enjoined from offsetting or withholding more funds from PCC through the TOP. The VA moves to dismiss Claim 5 on four grounds: (1) the VA has agreed to not to collect the Tuition Overpayment debts before final decision from the Committee; (2) "there is no claim for which the United States has waived sovereign immunity that would allow for injunctive relief"; (3) PCC has not alleged an adequate basis for injunctive relief; and (4) PCC has not adequately shown a threat of future injury. Defs.' Mot. at 24-27. The VA raised those identical arguments in *Klamath Comm. College*, 2022 WL 12075908, at *8-9. Judge Clarke discussed and rejected each of the VA's arguments. *Id.* Because Judge Clarke's thoughtful analysis applies with equal force to PCC's claims, the court likewise rejects the VA's arguments. Thus, the VA's motion to dismiss Claim 5 should be denied.

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

**CONCLUSION**

As explained above, defendants' Motion to Dismiss (ECF No. 22) should be DENIED.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due within fourteen days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED January 24, 2023.

_____
JEFFREY ARMISTEAD
United States Magistrate Judge